**REESE LLP**
Michael R. Reese
*mreese@reesellp.com*
George V. Granade
*ggranade@reesellp.com*
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile:  (212) 253-4272

**HALUNEN LAW**
Melissa W. Wolchansky (*pro hac vice to be filed*)
*wolchansky@halunenlaw.com*
Amy E. Boyle (*pro hac vice to be filed*)
*boyle@halunenlaw.com*
1650 IDS Center
80 South Eighth Street
Minneapolis, Minnesota  55402
Telephone: (612) 605-4098
Facsimile: (612) 605-4099

*Attorneys for Plaintiff and the Proposed Class*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| POLLY PODPESKAR, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DANNON COMPANY  INC.,<br>Defendant. | Case No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br>**<u>DEMAND FOR JURY TRIAL</u>** |

Plaintiff Polly Podpeskar, individually and on behalf of others similarly situated, alleges for her Class Action Complaint against Defendant Dannon Company, Inc. upon personal knowledge as to herself and her own acts, and as to all other matters upon information and belief, based upon, *inter alia*, the investigation made by her attorneys, as follows:

## SUMMARY OF THE ACTION

1.      This is a proposed class action brought on behalf of a "Nationwide Class", "Multi-State Class", and a "Minnesota Class" (collectively, "Class"), of individuals who purchased Defendant's yogurt products labeled as "All Natural." Defendant falsely represents that the products are All Natural, when, in fact, they contain ingredients derived using non-natural genetically modified organisms ("GMOs").[1] This lawsuit seeks to enjoin Defendant's false and misleading practices and recover damages and restitution on behalf of the Class under the applicable state laws.

2.      Defendant manufactures, markets, and sells twelve individual yogurt products under the brand name Dannon that are deceptively labeled as All Natural, despite containing GMOs. The following products are deceptively labeled as All Natural:

- Dannon All Natural Plain Yogurt, 32 ounces;

- Dannon All Natural Plain Lowfat Yogurt, 6 ounces;

- Dannon All Natural Plain Lowfat Yogurt, 32 ounces;

---

[1] As used herein, "genetically modified" refers to the use of molecular biology techniques, such as recombinant DNA techniques, to delete genes or to transfer genes for particular qualities from one species to another. In contrast to conventional breeding techniques, modern molecular biology techniques permit the insertion into an organism of genetic material from an unrelated species, such as the DNA of a fish into a tomato. *See* Ed Wallis, *Fish Genes into Tomatoes: How the World Regulates Genetically Modified Foods*, 80 N.D. L. Rev. 421 (2004).

- Dannon All Natural Plain Nonfat Yogurt, 6 ounces;

- Dannon All Natural Plain Nonfat Yogurt, 32 ounces;

- Dannon All Natural Plain Whole Milk Yogurt, 32 ounces;

- Dannon All Natural Vanilla Yogurt, 6 ounces;

- Dannon All Natural Vanilla Yogurt, 32 ounces;

- Dannon All Natural Coffee Yogurt, 6 ounces;

- Dannon All Natural Strawberry Yogurt, 6 ounces;

- Dannon All Natural Blueberry Yogurt, 6 ounces; and

- Dannon All Natural Peach Yogurt, 6 ounces.

(collectively, the "Products" or individually, "Product").[2]

3.     During the Class Period,[3] Defendant systematically marketed and advertised the Products, throughout the United States, as All Natural on the front panel of the Products' packaging, such that any consumer who purchased the Products, or who purchases the Products now or in the future, is exposed to Defendant's All Natural claim.

4.     All of the Products contain ingredients derived from GMOs, which are not natural. Specifically, all of the Products are produced from milk. On information and belief, the cows that produce the milk in the Products are fed GMO corn or GMO soy, neither of which are natural. The USDA has recognized that characteristics of an animal's feed (such as whether the

---

[2] Defendant may discontinue offering some yogurt products and regularly introduces new yogurt products that are also falsely and misleadingly labeled All Natural. Defendant may also market and sell additional substantially similar yogurt products of which Plaintiff is unaware. Plaintiff will ascertain the identity of these additional products through discovery.

[3] The Class Period shall encompass all sales during the applicable liability period, through the date of entry of class certification (the "Class Period").

feed is GMO) will affect the characteristics of the animal's end products. Thus, the milk Defendant uses to make the Products is not All Natural, and the final yogurt Products are not All Natural.

5.        Whether Defendant's labeling of the Products as All Natural is deceptive is judged by whether it would deceive or mislead a reasonable person.

6.        To label the Products as All Natural creates consumer deception and confusion. A reasonable consumer purchases the Products believing they are All Natural (i.e. they do not contain ingredients derived from GMOs) based on the Products' label. However, a reasonable consumer would not deem the Products to be All Natural if he or she knew that the Products contained ingredients derived from GMOs.

7.        Defendant's misrepresentations about the Products were uniform and were communicated to Plaintiff, and every other member of the Class, at every point of purchase and consumption throughout the Class Period.

8.        Defendant's conduct harms consumers by inducing them to purchase Products containing non-natural ingredients on the false premise that the Products are All Natural, when the consumers would not have otherwise purchased the Products, or paid a premium price for the Products, had they known that they were not in fact All Natural.

<u>**PARTIES**</u>

9.        Plaintiff Polly Podpeskar is a citizen of Minnesota, residing in St. Louis County, Minnesota. Plaintiff purchased the Products within the Class Period at various retail locations in St. Louis County, Minnesota.

10.       Plaintiff purchased the Products because she believed the Products were All Natural based on the labels. Plaintiff believes GMOs are not natural. Plaintiff believes that All

Natural products do not contain ingredients derived from GMOs. Had Defendant not made the false, misleading, and deceptive representation that the Products were All Natural, Plaintiff would not have been willing to pay the same amount for the Products or would not have purchased them at all if she knew the Products were not, in fact, All Natural. Plaintiff purchased, purchased more of, or paid more for the Products than she would have had she known the truth about the Products. The Products Plaintiff received were worth less than the Products for which she paid. However, if Defendant's labeling were truthful, Plaintiff would continue purchasing the Products.

11.      Defendant Dannon Company, Inc. is a Delaware corporation with its headquarters at 100 Hillside Avenue, White Plains, New York 10603. Defendant manufactures and markets yogurt products, including products under the brand name "Dannon."

## JURISDICTION AND VENUE

12.      This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. section 1332(d), in that: (1) this is a class action involving more than 100 class members; (2) Plaintiff is a citizen of the State of Minnesota and Defendant is a citizen of the States of Delaware and New York; and (3) the amount in controversy exceeds the sum of $5,000,000, exclusive of interest and costs.

13.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Defendant is organized under the laws of Delaware and maintains its principal place of business in New York.

## SUBSTANTIVE ALLEGATIONS

**A.    Defendant deliberately deceives consumers by falsely labeling the Products as All Natural.**

14.    Each year consumers purchase billions of dollars' worth of natural products. In 2010, U.S. consumers purchased $39 billion worth of natural/organic food products; up from $33.7 billion in 2009.[4] In order to capture the growing natural market, Defendant developed an extensive line of All Natural products, including the Products at issue in this case.

15.    Each and every one of the Products prominently professes that it is All Natural on the front label. (*See*, Exs. A-J.)



---

[4] Natural Products Association, http://www.npainfo.org/NPA/About_NPA/NPA/AboutNPA/AbouttheNaturalProductsAssociation.aspx?hkey=8d3a15ab-f44f-4473-aa6e-ba27ccebcbb8  (last visited October 12, 2016).

16.     Defendant's marketing of the Products on the Dannon website, www.dannon.com, reinforced the Products' alleged All Natural quality. Indeed, on the website, Defendant proclaims:

> **Naturally Delicious**
> Dannon plain yogurt is **made with only natural ingredients** and is delicious to enjoy by itself, with toppings, or as a cooking substitute for many of your favorite recipes.[5]

17.     The labeling of the Products was therefore designed to create consumer belief that the Products are All Natural.

18.     By consistently and systematically marketing and advertising the Products as All Natural on the Products' packaging, throughout the Class Period, Defendant ensured that all consumers purchasing the Products were, and all consumers purchasing the Products in the future will be, exposed to their misrepresentation that the Products are All Natural.

**B.     Defendant's Products Contain Ingredients Derived from non-natural GMOs.**

19.     As of 2012, approximately 88% of the corn planted in the United States was grown from a genetically modified seed.[6] For livestock, "[c]orn accounts for 91 percent of the feed grains used for feed, and soymeal is the principal oilseed crop product used as feed."[7] Consequently, on information and belief, the cows that produce the milk that Dannon uses to make the Products are fed GMO corn or GMO soy.

---

[5] Dannon Company, Dannon All Natural Yogurt, http://www.dannon.com/dannon-all-natural/ (last visited October 12, 2016) (capitalization in original; emphasis added).

[6] Clive James, *Global Status of Commercialized Biotech/GM Crops: 2012*, INT. SER. FOR THE ACQUISITION OF AGRI-BIOTECH APPLICATIONS (2012) 17, *available at* http://www.isaaa.org/resources/publications/briefs/44/download/isaaa-brief-44-2012.pdf.

[7] Richard Stillman et al., *Grain Prices Impact Entire Livestock Production Cycle*, USDA (2009), *available at* http://www.ers.usda.gov/amber-waves/2009-march/grain-prices-impact-entire-livestock-production-cycle.aspx#.VvQ98eIrIdU.

20.     According to many sources, including industry, government, and health organizations, GMOs are not natural.  GMOs are "created" artificially in a laboratory through genetic engineering.

21.     GMOs are organisms in which the genetic material (*i.e.*, DNA) have been altered in a way that does not occur naturally, allowing the organism to exhibit traits that would not appear in nature.  "Herbicide tolerant crops contain new genes that allow the plant to tolerate these herbicides. The most common herbicide-tolerant crops (cotton, corn, soybeans, and canola) are those that are resistant to glyphosate . . . ."[8,9]

22.     As recently as December 28, 2014, Monsanto Company, the world's dominant producer of genetically modified seeds, defined GMOs as "[p]lants or animals that ***have had their genetic makeup altered to exhibit traits that are not naturally theirs***.  In general, genes are taken (copied) from one organism that shows a desired trait and transferred into the genetic code of another organism."[10]

---

[8] U.S. Environmental Protection Agency, EPA's Regulation of Biotechnology for Use in Pest Management, https://web.archive.org/web/20150930160159/http://www.epa.gov/oppbppd1/biopesticides/reg_of_biotech/eparegofbiotech.htm. Glyphosate has been recognized as probably carcinogenic to humans by the International Agency for Research on Cancer, http://www.iarc.fr/en/media-centre/iarcnews/pdf/MonographVolume112.pdf.

[9] Glyphosate has been recognized as probably carcinogenic to humans by the International Agency for Research on Cancer, http://www.iarc.fr/en/media-centre/iarcnews/pdf/MonographVolume112.pdf.

[10] *Compare* Internet Archive Wayback Machine, Monsanto Company, Glossary, https://web.archive.org/web/20141228155838/http://www.monsanto.com/newsviews/Pages/glossary.aspx#g (last visited October 12, 2016) (Monsanto Company's definition of "Genetically Modified Organisms (GMO)" as of December 28, 2014) (emphasis added) *with* Monsanto Company, Glossary, www.monsanto.com/newsviews/pages/glossary.aspx#g (last visited October 12, 2016) (Monsanto Company's current definition of "Genetically Modified Organisms (GMO)").

23.    Romer Labs, a company that provides diagnostic solutions to the agricultural industry, discusses and defines GMOs as follows: "Agriculturally important plants are often genetically modified by the insertion of DNA material from outside the organism into the plant's DNA sequence, allowing the plant to *express novel traits that normally would not appear in nature*, such as herbicide or insect resistance. Seed harvested from GMO plants will also contain these modifications."[11]

24.    International bodies, such as the World Health Organization, define GMOs as "organisms (*i.e.* plants, animals or microorganisms) in which the genetic material (DNA) *has been altered in a way that does not occur naturally* by mating and/or natural recombination."[12]

25.    The United States Environmental Protection Agency has distinguished conventional breeding of plants from genetic engineering using modern scientific techniques, as follows:

> **4.  What is the difference between plant-incorporated protectants produced through genetic engineering and those produced through conventional breeding?**
>
> **Conventional breeding** is a method in which genes for pesticidal traits are introduced into a plant through natural methods, such as cross-pollination. For a plant-incorporated pesticide, one would breed a plant that produces a pesticide with a sexually compatible plant that does not possess this property but possesses other properties of interest to the breeder, *e.g.*, sweeter fruit. Then, out of the offspring, the breeder would choose the offspring plant that produces the pesticide, and therefore expresses the desired pesticidal trait, as well as producing sweeter fruit.

---

[11]    Romer    Labs,    Making    the    World's    Food    Safer    -    GMO, https://web.archive.org/web/20160323133353/http://www.romerlabs.com/en/knowledge/gmo/ (last visited Mar. 23, 2016) (emphasis added).

[12]  World Health Organization, Frequently asked questions on genetically modified foods, http://www.who.int/foodsafety/areas_work/food-technology/faq-genetically-modified-food/en/ (last visited October 12, 2016) (emphasis added).

**Genetically engineered** plant-incorporated protectants are created through a process that utilizes several different modern scientific techniques to introduce a specific pesticide-producing gene into a plant's DNA genetic material. For example, a desired gene that produces a desired pesticides (*e.g.*, the insecticidal protein *Bt* from the bacterium, *Bacillus thuringiensis*) can be isolated from another organism, such as a bacterium, and then inserted into a plant. The desired gene becomes part of the plant's DNA. The plant then expresses the incorporated gene and produces the pesticidal protein as it would one of its own components.[13]

26.    As Consumers Union explained:

Genetic engineering is not just an extension of conventional breeding. In fact, it differs profoundly. As a general rule, conventional breeding develops new plant varieties by the process of *selection*, and seeks to achieve expression of genetic material which is already present within a species. . . . Conventional breeding employs processes that occur in nature, such as sexual and asexual reproduction. . . .

Genetic engineering works primarily through *insertion* of genetic material, although gene insertion must also be followed up by selection. This insertion process does not occur in nature.[14]

27.    As the definitions and descriptions above from a wide array of industry, government, and health organizations indicate, GMOs are not natural because they do not naturally occur. Scientists create GMOs artificially in a laboratory through genetic engineering.

28.    Thus, by labeling the Products as All Natural, Defendant deceives and misleads reasonable consumers, since the Products are derived from ingredients derived from non-natural GMOs.

---

[13] Office of Prevention, Pesticides, and Toxic Substances, United States Environmental Protection Agency, Questions & Answers, Biotechnology: Final Plant-Pesticide/Plaint Incorporated Protectants (PIPs) Rules 3 (2001), *available at* https://web.archive.org/web/20150905225923/ http://www.epa.gov/scipoly/biotech/pubs/qanda.pdf (bold in original).

[14] Michael K. Hansen, Consumer Policy Institute / Consumers Union, Genetic Engineering Is Not An Extension Of Conventional Plant Breeding; How genetic engineering differs from conventional breeding, hybridization, wide crosses and horizontal gene transfer 1 (2000), *available at* http://consumersunion.org/wp-content/uploads/2013/02/Wide-Crosses.pdf (emphasis in original).

C.    **Reasonable consumers purchase the Products because they have been deceived to believe they are All Natural.**

29.    Defendant's labeling of the Products as All Natural unequivocally demonstrates its intent to persuade the consumer that the Products are All Natural (i.e. do not contain ingredients derived from GMOs). However, as described above, the Products contain ingredients derived from non-natural GMOs.

30.    Despite the inclusion of ingredients derived from GMOs, Defendant labels and markets the Products as All Natural.

31.    Reasonable consumers, including Plaintiff, purchased the Products based upon their belief that the Products were All Natural. However, a reasonable consumer would not deem the Products All Natural if he or she knew that they contained ingredients derived from GMOs.

32.    By way of example, a 2014 consumer survey confirmed that a majority (64%) of consumers think that the "natural" label on meat or poultry products currently means the animals' feed contained no GMOs.[15]

33.    According to another consumer survey, "[e]ighty-six percent of consumers expect a 'natural' label to mean processed foods do not contain any artificial ingredients."[16]

34.    As further guidance for whether a reasonable consumer would believe a product is All Natural if it contains ingredients derived from non-natural GMOs, the USDA has recognized

---

[15]    Consumer Reports National Research Center, Food Labels Survey: 2014 Nationally-Represented Phone Survey 6 (2014), *available at* https://web.archive.org/web/20160324141625/http://greenerchoices.org/pdf/ConsumerReportsFoodLabelingSurveyJune2014.pdf

[16]    Urvashi Rangan, Comments of Consumers Union on Proposed Guides for Use of Environmental Marketing Claims, 16 C.F.R. Part 260, Notice of the Federal Trade Commission (2010), *available at* www.ftc.gov/sites/default/files/documents/public_comments/guides-use-environmental-marketing-claims-project-no.p954501-00289%C2%A0/00289-57072.pdf    (also accessible as Comment 58 at http://www.ftc.gov/policy/public-comments/initiative-353).

that the characteristics of an animal's feed (such as whether the feed is GMO) will affect the characteristics of the animal's end products. In describing the production of milk from a cow grazing in a pasture, USDA stated that "the milk from that dairy cow is analogous to the crops harvested from the same field[.]"[17]  Thus, the USDA made clear that if a cow consumes GMO grass, the milk the cow produces is not "organic."[18]

35.    Similarly, reasonable consumers believe that if a cow consumes GMO corn or soy, then the cow's end products are not All Natural.  Thus, reasonable consumers believe that if a cow consumes GMO grass, corn, or soy and then produces milk, the milk is not All Natural and products derived from the milk, such as yogurt, are likewise not All Natural.

36.    Hence, Defendant's claims that the Products as All Natural are false and misleading.

**D.    Plaintiff and the Class Members Reasonably Relied on Defendant's Misrepresentations**.

37.    Consumers rely on food label representations and information in making purchasing decisions.

38.    The marketing of the Products as All Natural in a prominent location on the labels—throughout the Class Period—evidences Defendant's awareness that All Natural claims are material to consumers.

39.    Defendant's deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act

---

[17] National Organic Program—Revisions to Livestock Standards Based on Court Order (Harvey v. Johanns) and 2005 Amendment to the Organic Foods Production Act of 1990 (OFPA), 71 Fed. Reg. 24,820, 24,823 (Apr. 27, 2006).

[18] *Id.*

upon such information in making purchasing decisions.

40.    Plaintiff and the Class members reasonably relied to their detriment on Defendant's misleading representations and omissions.

41.    Defendant's false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the general public, as Defendant has already deceived and misled Plaintiff and the Class members.

**E.    Defendant's Wrongful Conduct Caused Plaintiff's and the Class Members' Injuries**.

42.    In making the false, misleading, and deceptive representations and omissions described herein, Defendant knew and intended that consumers would pay a premium for Products labeled All Natural over comparable products not so labeled.

43.    Plaintiff and the Class members all paid money for the Products.  However, Plaintiff and the Class members did not obtain the full value of the advertised Products due to Defendant's misrepresentations and omissions.  Plaintiff and the Class members purchased, purchased more of, or paid more for, the Products than they would have had they known the truth about the Products.  Consequently, Plaintiff and the Class members have suffered injury in fact and lost money as a result of Defendant's wrongful conduct.

44.    As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representations and omissions, Defendant injured Plaintiff and the Class members in that they:

    a.    paid a sum of money for Products that were not what Defendant represented;

    b.    paid a premium price for Products that were not what Defendant represented;

    c.    were deprived of the benefit of the bargain because the Products they purchased were different from what Defendant warranted;

      d.      were deprived of the benefit of the bargain because the Products they purchased had less value than what Defendant represented;

      e.      did not receive Products that measured up to their expectations, which Defendant created;

      f.      ingested a substance that was of a different quality than what Defendant promised; and

      g.      were denied the benefit of the beneficial properties of the natural foods Defendant promised.

45.    Had Defendant not made the false, misleading, and deceptive representations and omissions, Plaintiff and the Class members would not have been willing to pay the same amount for the Products they purchased, and, consequently, Plaintiff and the Class members would not have been willing to purchase the Products.

46.    Plaintiff and the Class members paid for Products that were All Natural but received Products that were not All Natural. The Products Plaintiff and the Class members received were worth less than the Products for which they paid.

47.    Based on Defendant's misleading and deceptive representations, Defendant was able to, and did, charge a premium price for the Products over the cost of competitive products not bearing an All Natural label.

48.    By way of example, Walmart sells a 32 ounce container of Dannon All Natural Plain Nonfat Yogurt for $2.78 ($0.087 per ounce).[19] By comparison, Walmart sells a 32 ounce container of Great Value Fat-Free Plain Yogurt—which does not make the All Natural claim—for $2.18 ($0.068 per ounce).[20] Thus, to purchase Dannon All Natural Yogurt, which Defendant

---

[19]  Wal-Mart,  https://www.walmart.com/ip/Dannon-Plain-All-Natural-Yogurt-32-oz/10291171 (last visited October 12, 2016).

[20]  Walmart,  https://www.walmart.com/ip/Great-Value-Fat-Free-Plain-Yogurt-32-oz/10450107 (last visited October 12, 2016).

falsely and misleadingly labels All Natural, Plaintiff and the Class members paid a premium over comparable yogurt products that are not labeled All Natural.

49.    Defendant profited enormously from its false and misleading marketing and sale of the Products. Consumers would not have purchased the Products had they known they were not All Natural, or would have purchased a less expensive product.

### F.    Rule 9(b) Allegations

50.    Federal Rule of Civil Procedure ("Rule") 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). As detailed in the paragraphs above, Plaintiff has satisfied the requirements of Rule 9(b) by establishing the following elements with sufficient particularity:

51.    WHO: Defendant made material misrepresentations and failed to adequately disclose material facts as detailed herein. Except as identified herein, Plaintiff is unaware, and therefore unable to identify, the true names and identities of those individuals at Defendant who are responsible for such material misrepresentations and omissions.

52.    WHAT: Defendant made material misrepresentations regarding the all-natural quality of the Products. Specifically, Defendant misrepresented that the Products were All Natural. These representations were false and misleading because the Products contained ingredients derived from non-natural GMOs, and therefore were not All Natural.

53.    WHEN: Defendant made the material misrepresentations, omissions, and non-disclosures detailed herein continuously at every point of purchase and consumption throughout the Class Period.

54.    WHERE: Defendant's material misrepresentations, omissions, and non-disclosures detailed herein were made, *inter alia*, on the packaging of the Products.

55.     HOW: Defendant made numerous, written material misrepresentations on the packaging of the Products that were designed to, and, in fact, did, mislead Plaintiff and Class members into purchasing the Products.

56.     WHY: Defendant engaged in the material misrepresentations, omissions, and non-disclosures detailed herein for the express purpose of inducing Plaintiff and other reasonable consumers to purchase or pay a premium for the Products based on the belief that the Products were All Natural. Defendant profited by selling the Products to thousands of unsuspecting consumers.

## CLASS ALLEGATIONS

57.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23. Plaintiff seeks to represent the following classes:

A.     The "Minnesota Class," which consists of: All consumers within the State of Minnesota who purchased the Products during the applicable liability period for their personal use, rather than for resale or distribution. Excluded from the Minnesota Class are Defendant's current or former officers, directors, and employees; counsel for Plaintiff and Defendant; and the judicial officer to whom this lawsuit is assigned.

B.     The "Multi-State Class," which consists of: All consumers in Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, the District of Columbia, Georgia, Hawaii, Idaho, Illinois, Indiana, Kansas, Kentucky, Maine, Massachusetts, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, Washington, West Virginia, or Wyoming who purchased the Products during the applicable liability period for their personal use, rather than for resale or distribution. Excluded from the Multi-State Class are Defendant's current or former officers, directors, and employees; counsel for Plaintiff and Defendant; and the judicial officer to whom this lawsuit is assigned.

C.     The "Nationwide Class," which consists of: All consumers in the

United States and its territories who purchased the Products during the applicable liability period for their personal use, rather than for resale or distribution. Excluded from the Nationwide Class are Defendant's current or former officers, directors, and employees; counsel for Plaintiff and Defendant; and the judicial officer to whom this lawsuit is assigned.

58.     The requirements of Federal Rule of Civil Procedure 23 are satisfied because:

A.     <u>Numerosity</u>: The members of each Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is presently unknown to Plaintiff, based on Defendant's volume of sales, Plaintiff estimates that each Class numbers in the thousands.

B.     <u>Commonality</u>: There are questions of law and fact that are common to the Class members and that predominate over individual questions. These include the following:

    i.     Whether Defendant materially misrepresented to the Class members that the Products are All Natural;

    ii.     Whether Defendant's misrepresentations and omissions were material to reasonable consumers;

    iii.     Whether Defendant's labeling, marketing, and sale of the Products constitutes an unfair, unlawful, or fraudulent business practice;

    iv.     Whether Defendant's labeling, marketing, and sale of the Products constitutes false advertising;

    v.     Whether Defendant's conduct described above constitutes a breach of warranty;

    vi.     Whether Defendant's conduct injured consumers and, if so, the extent of the injury; and

    vii.     The appropriate remedies for Defendant's conduct.

C.    <u>Typicality</u>: Plaintiff's claims are typical of the claims of the Class members because Plaintiff suffered the same injury as the Class members—*i.e.*, Plaintiff purchased the Product based on Defendant's misleading representations that the Products were All Natural.

D.    <u>Adequacy</u>: Plaintiff will fairly and adequately represent and protect the interests of the members of each Class. Plaintiff does not have any interests that are adverse to those of the class members. Plaintiff has retained competent counsel experienced in Class action litigation and intends to prosecute this action vigorously.

E.    <u>Superiority</u>: A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender. Since the damages suffered by individual class members are relatively small, the expense and burden of individual litigation make it virtually impossible for the Class members to seek redress for the wrongful conduct alleged, while an important public interest will be served by addressing the matter as a class action.

59.    The prerequisites for maintaining a class action for injunctive or equitable relief under Federal Rule of Civil Procedure 23(b)(2) are met because Defendant has acted or refused to act on grounds generally applicable to each class, thereby making appropriate final injunctive or equitable relief with respect to each class as a whole.

## FIRST CAUSE OF ACTION
### (Prevention of Consumer Fraud Act – Violation of Minn. Stat. § 325F.69 – by the Minnesota Class)

60.     Plaintiff incorporates by reference the allegations set forth above.

61.     Plaintiff brings this claim individually and on behalf of the Minnesota Class.

62.     Minnesota Statute §325F.69, subd. 1, makes it unlawful for any person by use of "any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby."

63.     Defendant's business practices, in advertising, marketing, and selling its Products as All Natural, constitute the use of fraud, false pretense, false promises, misrepresentations, misleading statements, and deceptive practices and, thus, constitute multiple, separate violations of Minn. Stat. §325F.69.

64.     By engaging in the conduct described herein, Defendant violated and continues to violate Minn. Stat. §325F.69, subd. 1.

65.     Defendant's wrongful conduct and use of false pretenses, false promises, misrepresentations, and misleading statements, all with the intent that others relied on those statements, includes, by way of example and not by limitation:

a.     Defendant's fraudulent, misleading, and deceptive statements and practices relating to its Products;

b.     Defendant's warranty-related misconduct, including its fraudulent, deceptive, and unfair practice of misrepresenting its Products' characteristics;

c.     Defendant's concealment of the true characteristics of its Products; and

d.     Defendant's continued sale of its Products after it knew about the misleading representations.

66.     Defendant's omissions and misrepresentations set forth in this Complaint are material in that they relate to information that would naturally affect the purchasing decision or conduct of purchasers, including Plaintiff and the other members of the Minnesota Class, regarding whether or not to purchase Defendant's Products.

67.     Had Plaintiff and the other members of the Minnesota Class known that Defendant's Products were not All Natural they would not have purchased the Products or paid a premium for the Products.

68.     Defendant fraudulently, negligently, recklessly, and intentionally concealed or failed to disclose the true characteristics of the Products for the purpose of inducing Plaintiff and the other members of the Minnesota Class to rely thereon, and Plaintiff and the other members of the Minnesota Class justifiably relied, to their detriment, upon the truth and completeness of Defendant's representations about its Products. Plaintiff and the other members of the Minnesota Class relied on Defendant to disclose all material facts and not omit any material information regarding its Products. That Plaintiff and the other members of the Minnesota Class were deceived is evidenced by the fact that Plaintiff and the other members of the Minnesota Class purchased the Products. Had they known the truth, Plaintiff and the other members of the Minnesota Class would not have bought Defendant's Products. Defendant's fraudulent and deceptive practice of advertising, marketing, and selling the Products repeatedly occurred in Defendant's trade or business and was capable of deceiving a substantial portion of the purchasing public.

69.     Where, as here, Plaintiff's claims inure to the public benefit as Defendant has misrepresented the All Natural quality of the Products to the public at large, Minnesota's private-attorney general statute, Minn. Stat. §8.31, subd. 3a, allows individuals who have been injured

through a violation of these consumer-protection statutes to bring a civil action and recover damages, together with costs and disbursements, including reasonable attorneys' fees.

70.    As a result of Defendant's fraud, false pretense, false promises, misrepresentations, misleading statements, and deceptive practices relating to the sale of its Products, Plaintiff and the other members of the Minnesota Class have suffered actual damages in that they would not have purchased the Products or paid a premium for the Products if they had known that the All Natural representations regarding the Products are false.

71.    Plaintiff and the other members of the Minnesota Class will continue to suffer injury if Defendant's deceptive conduct is not enjoined, including, but not limited to the purchase price of the Products or the premium paid for the Products.

72.    As a direct, proximate, and foreseeable result of Defendant's violation of the statute, Plaintiff and the other members of the Minnesota Class sustained damages.

73.     THEREFORE, Plaintiff prays for relief as set forth below.

<b><u>SECOND CAUSE OF ACTION</u></b><br><b>(Violation of the Unlawful Trade Practices Act – Violations of Minn. Stat. § 325D.13 – By the Minnesota Class)</b>

74.    Plaintiff incorporates by reference the allegations set forth above.

75.    Minnesota Statute §325D.13 provides that, "No person shall, in connection with the sale of merchandise, knowingly misrepresent, directly or indirectly, the true quality, ingredients or origin of such merchandise."

76.    By engaging in the conduct described herein, Defendant violated and continues to violate Minn. Stat. §325D.13.

77.    Where, as here, Plaintiff's claims inure to the public benefit as Defendant has misrepresented the All Natural quality of the Products to the public at large, Minnesota's private-attorney general statute, Minn. Stat. §8.31, subd. 3a, allows individuals who have been injured

through a violation of these consumer-protection statutes to bring a civil action and recover damages, together with costs and disbursements, including reasonable attorneys' fees.

78.     Defendant's wrongful conduct and misrepresentation of the true quality of its Products includes, by way of example and not by limitation:

    a.     Defendant's fraudulent, misleading, and deceptive statements and practices relating to its Products;

    b.     Defendant's warranty-related misconduct, including its fraudulent, deceptive, and unfair practice of misrepresenting its Products' characteristics;

    c.     Defendant's concealment of the true characteristics of its Products; and

    d.     Defendant's continued sale of its Products after it knew about the misleading representations.

79.     Defendant and its agents and distributors also misrepresented the true characteristics of Defendant's Products by making the various statements about the alleged quality and characteristics of the Products as stated above.

80.     Defendant's omissions and misrepresentations set forth in this Complaint are material in that they relate to information that would naturally affect the purchasing decision or conduct of purchasers, including Plaintiff and the Minnesota Class members, regarding whether or not to purchase Defendant's Products.

81.     As a result of Defendant's practices relating to misrepresentation of the true characteristics of the Products, Plaintiff and the Minnesota Class members have suffered actual damages in that they would not have purchased the Products or paid a premium for the Products if they had known that the All Natural representations regarding the Products were and are false.

82.     In order to prevent future injury to Plaintiff and the Minnesota Class, Plaintiff and

the Minnesota Class seek injunctive relief in the form of a label change removing all deceptive and misleading statements.

83.     As a direct, proximate, and foreseeable result of Defendant's violation of the statute, Plaintiff and the other Minnesota Class members were injured and suffered damages, and are entitled to recover their actual damages, costs, and disbursements, including costs of investigation and reasonable attorneys' fees, as well as injunctive relief, including restitution, as determined by the Court, pursuant to Minnesota law, including Minn. Stat. §§ 8.31, subd. 1 and 3a and 325D.15.

84.     THEREFORE, Plaintiff prays for relief as set forth below.

## THIRD CAUSE OF ACTION
**(Violation of the Deceptive Trade Practices Act – Violations of Minn. Stat. § 325D.44 – By the Minnesota Class)**

85.     Plaintiff incorporates by reference the allegations set forth above.

86.     Minnesota Statutes § 325D.44, subd. 1, provides in part:

A person engages in deceptive trade practices when, in the course of business, vocation, or occupation, the person
* * *

(5) Represents that goods or services have…characteristics, ingredients, uses, benefits…that they do not have…

(7) Represents that goods or services are of a particular standard, quality, or grade,…if they are of another. . . .

(13) Engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

87.     By engaging in the conduct described herein, Defendant violated and continues to violate Minn. Stat. § 325D.44.

88.     Where, as here, Plaintiff's claims inure to the public benefit as Defendant has misrepresented the All Natural quality of the Products to the public at large, Minnesota's private-

attorney general statute, Minn. Stat. §8.31, subd. 3a, allows individuals who have been injured through a violation of these consumer-protection statutes to bring a civil action and recover damages, together with costs and disbursements, including reasonable attorneys' fees.

89.     Defendant's wrongful conduct and misrepresentation of the true characteristics, standards, quality, and grade of the Products includes, by way of example and not by limitation:

> a.     Defendant's fraudulent, misleading, and deceptive statements relating to the true characteristics, standards, quality, and grade of its Products;
>
> b.     Defendant's fraud and misrepresentation, of information about the characteristics of Defendant's Products, and the Defendant's knowledge of those misrepresentations; and
>
> c.     Defendant's concealment of the true characteristics of its Products.

90.     Defendant and its agents and distributors also misrepresented the true characteristics, standards, quality, and grade of the Products by making various statements about the alleged quality and characteristics of the Products herein.

91.     As a result of the Defendant's practices relating to misrepresentation of the true characteristics, standards, quality, and grade of its Products, Plaintiff and the Minnesota Class members have suffered actual damages in that they would not have purchased the Products or paid a premium for the Products if they had known that the All Natural representations regarding the Products were and continue to be false.

92.     In order to prevent future injury to Plaintiff and the Minnesota Class, Plaintiff and the Minnesota Class seek injunctive relief in the form of a label change removing all deceptive and misleading statements.

93.     As a direct, proximate, and foreseeable result of Defendant's violation of the

statute, Plaintiff and the other Minnesota Class members were injured and suffered damages, and are entitled to recover their actual damages, costs, and disbursements, including costs of investigation and reasonable attorneys' fees, as well as injunctive relief and other equitable relief, including restitution, as determined by the Court, pursuant to Minnesota law, including Minn. Stat. § 8.31, subd. 1 and 3a and 325D.45.

94.     THEREFORE, Plaintiff prays for relief as set forth below.

## FOURTH CAUSE OF ACTION
### (False Advertising – Violations of Minn. Stat. § 325F.67 – By the Minnesota Class)

95.     Plaintiff incorporates by reference the allegations set forth above.

96.     Minnesota Statutes §325F.67 provides in part:

Any person, firm, corporation, or association who, with intent to sell or in any way dispose of merchandise, . . . service, directly or indirectly, to the public, for sale or distribution, or with intent to increase the consumption thereof, or to induce the public in any manner to enter into any obligation relating thereto, makes, publishes, disseminates, circulates, or place before the public, or causes, directly or indirectly, to be made, published, disseminated, circulated, or places before the public, in this state, in a newspaper or other publication, or in the form of a book, notice, handbill, poster, bill, label, price tag, circular, pamphlet, program, or letter, or over any radio or television station, in any other way, an advertisement of any sort regarding merchandise, . . . service or anything so offered to the public for use, consumption, purchase, or sale, which advertising contains any material assertion, representation or statement of fact which is untrue, deceptive, or misleading, shall, whether or not pecuniary or other specific damage to any other person occurs as a direct result thereof, be guilty of a misdemeanor, and any such act is declared to be a public nuisance and may be enjoined as such.

97.     By engaging in the conduct described herein, namely labeling the Products as All Natural, when, in fact, they are not, Defendant violated and continues to violate Minn. Stat. § 325F.67.

98.     Where, as here, Plaintiff's claims inure to the public benefit, as Defendant has misrepresented the All Natural quality of the Products to the public at large, Minnesota's private-attorney general statute, Minn. Stat. § 8.31, subd. 3a, allows individuals who have been injured

through a violation of these consumer-protection statutes to bring a civil action and recover damages, together with costs and disbursements, including reasonable attorneys' fees.

99.    Defendant's untrue, deceptive, and misleading assertions and representations about its Products include, by way of example and not by limitation:

a.    Defendant's fraudulent, misleading, and deceptive statements relating to the true characteristics, standards, quality, and grade of Defendant's Products;

b.    Defendant's fraud and misrepresentation of information about the characteristics of Defendant's Products and its knowledge of those misrepresentations; and

c.    Defendant's concealment of the true characteristics of the Products.

100.    Defendant and its agents and distributors also made untrue, deceptive, and misleading assertions and representations about its Products by making the various statements about the alleged characteristics of the Products referenced herein.

101.    Defendant's omissions and misrepresentations set forth in this Complaint are material in that they relate to information that would naturally affect the purchasing decision or conduct of purchasers, including Plaintiff and the Minnesota Class members, regarding whether or not to purchase Defendant's Products.

102.    As a result of the Defendant's untrue, deceptive, and misleading assertions and representations about its Products, Plaintiff and the other Minnesota Class members have suffered actual damages in that they would not have purchased the Products or paid a premium for the Products if they had known that the All Natural representations regarding the Products were and continue to be false.

103.    Plaintiff and the Minnesota Class seek to enjoin Defendant from making untrue, deceptive, and misleading assertions and representations about the Products.

104.    THEREFORE, Plaintiff prays for relief as set forth below.

### FIFTH CAUSE OF ACTION
**(Fraud under New York Common Law – By the Nationwide Class)**

105.    Plaintiff incorporates by reference the allegations set forth above.

106.    As discussed above, Defendant provided Plaintiff and the Nationwide Class members with false or misleading material information and failed to disclose material facts about the Products, including, but not limited to the claims regarding the All Natural quality. These misrepresentations and omissions were made with knowledge of their falsehood.

107.    The misrepresentations and omissions made by Defendant, upon which Plaintiff and the Nationwide Class members reasonably and justifiably relied, were intended to induce and actually did induce Plaintiff and the Nationwide Class members to purchase the Products.

108.    The fraudulent actions of Defendant caused damage to Plaintiff and the Nationwide Class members, who are entitled to damages and other legal and equitable relief as a result.

109.    THEREFORE, Plaintiff prays for relief as set forth below.

### SIXTH CAUSE OF ACTION
**(Unjust Enrichment under New York Common Law)**

110.    Plaintiff incorporates by reference and reallege all allegations set forth in the preceding paragraphs.

111.    As a result of Defendant's deceptive, fraudulent, and misleading labeling, advertising, marketing, and sales of Products, Defendants were enriched, at the expense of Plaintiff and the other Class members through the payment of the purchase price for the Products.

112.    Under the circumstances, it would be against equity and good conscience to permit Defendant to retain the ill-gotten benefits that it received from Plaintiff and the other Class members in light of the fact that the Products purchased by Plaintiff and the other Class members were not what Defendants purported them to be.   Thus, it would be unjust or inequitable for Defendant to retain the benefit without restitution to Plaintiff and the other Class members for the monies paid to Defendant for such products.

113.    Therefore, Plaintiff pray for relief as set forth below.

## SEVENTH CAUSE OF ACTION
### (Breach of Express Warranty – By the Multi-State Class)

114.    Plaintiff incorporates by reference the allegations set forth above.

115.    Plaintiff and the Multi-State Class members formed a contract with Defendant at the time they purchased the Products. As part of that contract, Defendant represented that the Products were All Natural, as described above. These representations constitute express warranties and became part of the basis of the bargain between Plaintiff and the Multi-State Class members, on the one hand, and Defendant, on the other.

116.    Defendant made the above-described representations to induce Plaintiff and the Multi-State Class members to purchase the Products, and Plaintiff and the Multi-State Class members relied on the representations in purchasing the Products.

117.    All conditions precedent to Defendant's liability under the above-referenced contract have been performed by Plaintiff and the other Multi-State Class members.

118.    Defendant breached its express warranties about the Products because, as alleged above, the Products are not All Natural. Defendant breached the following state warranty laws:

   A.  Alaska Stat. section 45.02.313;

   B.  A.R.S. section 47-2313;

C.    A.C.A. section 4-2-313;

D.    Cal. Comm. Code section 2313;

E.    Colo. Rev. Stat. section 4-2-313;

F.    Conn. Gen. Stat. section 42a-2-313;

G.    6 Del. C. section 2-313;

H.    D.C. Code section 28:2-313;

I.    O.C.G.A. section 11-2-313;

J.    HRS section 490:2-313;

K.    Idaho Code section 28-2-313;

L.    810 ILCS 5/2-313;

M.    Ind. Code section 26-1-2-313;

N.    K.S.A. section 84-2-313;

O.    KRS section 355.2-313;

P.    11 M.R.S. section 2-313;

Q.    Mass. Gen. Laws Ann. ch. 106 section 2-313;

R.    Minn. Stat. section 336.2-313;

S.    Miss. Code Ann. section 75-2-313;

T.    R.S. Mo. Section 400.2-313;

U.    Mont. Code Anno. Section 30-2-313;

V.    Neb. Rev. Stat. section 2-313;

W.    Nev. Rev. Stat. Ann. section 104.2313;

X.    RSA 382-A:2-313;

Y.    N.J. Stat. Ann. section 12A:2-313;

Z.      N.M. Stat. Ann. section 55-2-313;

AA.     N.Y. U.C.C. Law section 2-313;

AB.     N.C. Gen. Stat. section 25-2-313;

AC.     N.D. Cent. Code section 41-02-30;

AD.     ORC Ann. section 1302.26;

AE.     12A Okl. St. section 2-313;

AF.     Or. Rev. Stat. section 72-3130;

AG.     13 Pa.C.S. section 2313;

AH.     R.I. Gen. Laws section 6A-2-313;

AI.     S.C. Code Ann. section 36-2-313;

AJ.     S.D. Codified Laws, section 57A-2-313;

AK.     Tenn. Code Ann. section 47-2-313;

AL.     Tex. Bus. & Com. Code section 2.313;

AM.     Utah Code Ann. section 70A-2-313;

AN.     9A V.S.A. section 2-313;

AO.     Va. Code Ann. section 59.1-504.2;

AP.     Wash. Rev. Code Ann. section 62A.2-313;

AQ.     W. Va. Code section 46-2-313; and

AR.     Wyo. Stat. section 34.1-2-313.

119.    As a result of Defendant's breaches of express warranty, Plaintiff and the other members of the Multi-State Class were damaged in the amount of the purchase price they paid for the Products, in amounts to be proven at trial.

120.    Within a reasonable time after they knew or should have known of such breach,

Plaintiff, on behalf of herself and the other members of the Multi-State Class, placed Defendant on notice thereof.

121.    THEREFORE, Plaintiff prays for relief as set forth below.

## EIGHTH CAUSE OF ACTION
## VIOLATION OF STATE CONSUMER PROTECTION STATUTES
### (On Behalf of Plaintiff and All Class Members)

122.    Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

123.    Plaintiff and Class Members have been injured as a result of Defendant's violations of the following state consumer protection statutes, which also provide a basis for redress to Plaintiff and Class Members based on Defendant's fraudulent, unfair, and unconscionable acts, practices, and conduct.

124.    Defendant's conduct alleged herein violates the consumer protection, unfair trade practices, and deceptive acts laws of each of the following jurisdictions:

a.    **Alaska:** Defendant's practices were and are in violation of Alaska's Unfair Trade Practices and Consumer Protection Act, Alaska Stat. § 45.50.471, *et seq.*

b.    **Arizona:**  Defendant's practices were and are in violation of Arizona's Consumer Fraud Act, Ariz. Rev. Stat. Ann. §§ 44-1521, *et seq*.

c.    **Arkansas:**  Defendant's practices were and are in violation of Arkansas Code Ann. § 4-88-101, *et seq.*

d.    **California:**  Defendant's practices were and are in violation of California Consumer Legal Remedies Act, Civil Code § 1750, *et seq*., andCalifornia's Unfair Competition Law, California Business and Professions Code § 17200, *et*

*seq.*, and California's False Advertising Law, California Business and Professions Code § 17500, *et seq.*

e.  **Colorado**:  Defendant's practices were and are in violation of Colorado's Consumer Protection Act, Colo. Rev. Stat. §§ 61-1-101, *et seq.*

f.  **Connecticut:**  Defendant's practices were and are in violation of Connecticut's Gen. Stat. § 42-110a, *et seq.*

g.  **Delaware:**  Defendant's practices were and are in violation of Delaware's Consumer Fraud Act, Del. Code Ann. tit. 6, § 2511, *et seq.* and the Deceptive Trade Practices Act, Del. Code Ann. tit. 6, § 2531, *et seq.*

h.  **District of Columbia:**  Defendant's practices were and are in violation of the District of Columbia's Consumer Protection Act, D.C. Code § 28-3901, *et seq.*

i.  **Florida:**  Defendant's practices were and are in violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.*

j.  **Hawaii:**  Defendant's practices were and are in violation of the Hawaii's Uniform Deceptive Trade Practices Act, Haw. Rev. Stat. § 481A-1, *et seq.* and Haw. Rev. Stat. § 480-2.

k.  **Idaho:**  Defendant's practices were and are in violation of Idaho's Consumer Protection Act, Idaho Code Ann. § 48-601, *et seq.*

l.  **Illinois:**  Defendant's acts and practices were and are in violation of Illinois' Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/2; and Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 510/2.

m.  **Indiana:**  Defendant's practices were and are in violation of Indiana's Deceptive Consumer Sales Act, Ind. Code Ann. § 24-5-0.5-1, *et seq.*

n.  **Kansas:**  Defendant's practices were and are in violation of Kansas's Consumer Protection Act, Kat. Stat. Ann. § 50-623, *et seq.*

o.  **Kentucky:**  Defendant's practices were and are in violation of Kentucky's Consumer Protection Act, Ky. Rev. Stat. Ann. § 367.110, *et seq.*

p.  **Maine:**  Defendant's practices were and are in violation of the Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. Ann. Tit. 5, § 205-A, *et seq.* and 10 Me. Rev. Stat. Ann. § 1101, *et seq.*

q.  **Maryland:**  Defendant's practices were and are in violation of Maryland's Consumer Protection Act, Md. Code Ann. Com. Law § 13-101, *et seq.*

r.  **Massachusetts:**  Defendant's practices were unfair and deceptive acts and practices in violation of Massachusetts' Consumer Protection Act, Mass. Gen. Laws ch. 93A, § 2.

s.  **Michigan:**  Defendant's practices were and are in violation of Michigan's Consumer Protection Act, Mich. Comp. Laws Ann. § 445.901, *et seq.*

t.  **Minnesota:**  Defendant's practices were and are in violation of Minnesota's Prevention of Consumer Fraud Act, Minn. Stat. § 325F.68, *et seq.* and the Unlawful Trade Practices law, Minn. Stat. § 325D.09, *et seq.*

u.  **Missouri:**  Defendant's practices were and are in violation of Missouri's Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.*

v.  **Nebraska:**  Defendant's practices were and are in violation of Nebraska's Consumer Protection Act, Neb. Rev. Stat. § 59-1601, *et seq.* and the Uniform Deceptive Trade

Practices Act, § 87-302, *et seq.*

w.  **Nevada:**  Defendant's practices were and are in violation of Nevada's Deceptive Trade Practices Act, Nev. Rev. Stat. Ann. §§ 598.0903 and 41.600.

x.  **New Hampshire:**  Defendant's practices were and are in violation of New Hampshire's Regulation of Business Practices for Consumer Protection, N.H. Rev. Stat. Ann. § 358-A:1, *et seq.*

y.  **New Jersey:**  Defendant's practices were and are in violation of New Jersey's Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1, *et seq.*

z.  **New Mexico:**  Defendant's practices were and are in violation of New Mexico's Unfair Practices Act, N.M. Stat. Ann. § 57-12-1, *et seq.*

aa.  **New York:**  Defendant's practices were in and are in violation of New York's Gen. Bus. Law §§ 349, *et seq.*

bb.  **North Carolina:**  Defendant's practices were and are in violation of North Carolina's Unfair Deceptive Trade Practices Act, N.C. Gen. Stat. Ann. § 75-1, *et seq.*

cc.  **North Dakota:**  Defendant's practices were and are in violation of North Dakota's Unlawful Sales or Advertising Practices law, N.D. Cent. Code § 51-15-01, *et seq.*

dd.  **Ohio:**  Defendant's practices were and are in violation of Ohio's Consumer Sales Practices Act, Ohio Rev. Code Ann. § 1345.01, *et seq.* and Ohio's Deceptive Trade Practices Act. Ohio Rev. Code Ann. § 4165.01, *et seq.*

ee.  **Oklahoma:**  Defendant's practices were and are in violation of Oklahoma's Consumer Protection Act, Okla. Stat. Ann. tit. 15 § 751, *et seq.*, and Oklahoma's Deceptive Trade Practices Act, Okla. Stat. Ann. tit. 78 § 51, *et seq.*

ff.  **Oregon:**  Defendant's practices were and are in violation of Oregon's Unlawful Trade Practices law, Or. Rev. Stat. § 646.605, *et seq.*

gg.  **Pennsylvania:**  Defendant's practices were and are in violation of Pennsylvania's Unfair Trade Practice and Consumer Protection Law, 73 Pa. Stat. Ann. § 201-1, *et seq.*

hh.  **Rhode Island:**  Defendant's practices were and are in violation of Rhode Island's Deceptive Trade Practices Act, R.I. Gen. Laws § 6-13.1-1, *et seq.*

ii.  **South Dakota:**  Defendant's practices were and are in violation of South Dakota's Deceptive Trade Practices and Consumer Protection Act, S.D. Codified Laws § 37-24-1, *et seq.*

jj.  **Texas:**  Defendant's practices were and are in violation of Texas' Deceptive Trade Practices Consumer Protection Act, Tex. Bus. & Com. Code Ann. § 17.41, *et seq.*

kk.  **Utah:**  Defendant's practices were and are in violation of Utah's Consumer Sales Practices Act, Utah Code Ann. § 13-11-1, *et seq.*, and Utah's Truth in Advertising Law, Utah Code Ann. § 13-11a-1, *et seq.*

ll.  **Vermont:**  Defendant's practices were and are in violation of Vermont's Consumer Fraud Act, Vt. Stat. Ann. tit. 9 § 2451, *et seq.*

mm.  **Washington:**  Defendant's practices were and are in violation of Washington Consumer Protection Act, Wash. Rev. Code Ann. § 19.86, *et seq.*

nn.  **West Virginia:**  Defendant's practices were and are in violation of West Virginia's Consumer Credit and Protection Act, W. Va. Code § 46A-6-101, *et seq.*

oo. **Wisconsin:** Defendant's practices were and are in violation of Wisconsin's Consumer Act, Wis. Stat. §421.101, *et seq*.

pp. **Wyoming:** Defendant's practices were and are in violation of Wyoming's Consumer Protection Act, Wyo. Stat. Ann. §40-12-101, *et seq*.

125. Defendant violated the aforementioned states' unfair and deceptive acts and practices laws by representing that the Products are "Natural."

126. Contrary to Defendant's representations, the Products are not "Natural."

127. Defendant's misrepresentations were material to Plaintiff's and Class Members' decision to pay a premium for the Products.

128. Defendant mad its untrue and misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

129. As a result of Defendant's violations of the aforementioned states' unfair and deceptive practices laws, Plaintiff and Class Members paid a premium for the Products.

130. Pursuant to the aforementioned states' unfair and deceptive practices laws, Plaintiff and Class Members are entitled to recover compensatory damages, restitution, punitive, and special damages including but not limited to treble damages, reasonable attorneys' fees and costs, and other injunctive or declaratory relief as deemed appropriate or permitted pursuant to the relevant law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, prays for judgment against Defendant as follows:

A.      For an order enjoining Defendant from continuing the unlawful practices set forth above;

B.      For an order requiring Defendant to disgorge and make restitution of all monies it acquired by means of the unlawful practices set forth above;

C.      For compensatory damages according to proof;

D.      For punitive damages according to proof;

E.      For reasonable attorneys' fees and costs of suit;

F.      For pre-judgment interest; and

G.      For such other relief as the Court deems proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury on all claims so triable.

Date:  October 31, 2016                Respectfully submitted,

**REESE LLP**

*/s/ Michael R. Reese*
Michael R. Reese
*mreese@reesellp.com*
George V. Granade
*ggranade@reesellp.com*
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile:  (212) 253-4272

**HALUNEN LAW**
Melissa Wolchansky (*pro hac vice to be filed*)
Amy E. Boyle (*pro hac vice to be filed*)
1650 IDS Center
80 S 8th Street
Minneapolis, MN 55402
Telephone: (612) 605-4 098
Facsimile: (612) 605-4099

*Attorneys for Plaintiff and the Proposed Class*

# EXHIBIT A



# EXHIBIT B



# EXHIBIT C



# EXHIBIT D



# EXHIBIT E



# EXHIBIT F



# EXHIBIT G



# EXHIBIT H



# EXHIBIT I



# EXHIBIT J

