| UNITED STATES DISTRICT COURT | USDC SDNY |
| SOUTHERN DISTRICT OF NEW YORK | DOCUMENT |
| | ELECTRONICALLY FILED |
| | DOC #: _____ |
| | DATE FILED: December 3, 2017 |

------------------------------------------------------------X
POLLY PODPESKAR, individually on behalf of
herself and all others similarly situated,

                          Plaintiff,

            -v-

DANNON COMPANY, INC.,

                          Defendant.
------------------------------------------------------------X

16-cv-8478 (KBF)

OPINION & ORDER

KATHERINE B. FORREST, District Judge:

In this case, plaintiff alleges that she was deceived by defendant's yogurt labels—which proclaimed its products to be "natural." She alleges that where the cows that produced the milk that produced the yogurt, may, at some point, have eaten feed made from corn that was genetically modified, or been raised using hormones and certain milk production methods, the word "natural" is deceptive.

On October 31, 2016, plaintiff Polly Podpeskar, a Minnesota resident and yogurt consumer, filed suit against defendant Dannon Company, Inc. ("Dannon"), seeking to certify a class action on behalf of herself and putative Minnesota, multi-state, and national classes. (ECF No. 1.) Her complaint alleges violations of various Minnesota and other state-law claims. She challenges the "Natural" label on twelve different varieties of yogurt products (the "Products"), claiming that a reasonable consumer would not deem the Products to be All Natural if he or she knew that the Products contained ingredients 'derived' either from cows that are fed

crops made from genetically modified organisms ("GMOs") or cows raised using hormones and certain milk production methods. Accordingly, she seeks injunctive relief; restitution; compensatory and punitive damages; attorneys' fees and costs; and prejudgment interest.

On April 10, 2017, Dannon filed a motion to dismiss, or in the alternative a motion to stay the case pending relevant FDA regulations. (ECF No. 32.) This matter was transferred to the undersigned on September 26, 2017. The Court finds that plaintiff fails to state a plausible claim to relief. Accordingly, the Court GRANTS the defendant's motion.

I. FACTUAL BACKGROUND

The factual allegations discussed below are drawn from the Second Amended Complaint (ECF No. 24, Second Am. Compl. ("SAC")) and assumed true for the purposes of this decision.[1]

Plaintiff is a citizen of Minnesota who has purchased various Dannon Products believing they were "All Natural" based upon their labeling. (SAC, ¶ 9–10.)

Defendant is a Delaware corporation, headquartered in New York, that makes and manufactures yogurt products, including products under the brand-name "Dannon." (Id. ¶ 11.)

---

[1] As a preliminary matter, very little of plaintiff's complaint is specific to Dannon and its alleged practices; rather her complaint broadly describes animal husbandry practices and the use of GMOS nationwide. The Court will first describe the allegations specific to defendant.

2

Plaintiff alleges that Dannon markets its Products as "All Natural," stating, for example: "Dannon plain yogurt is made with only natural ingredients and is delicious to enjoy by itself, with toppings, or as a cooking substitute . . . ." (Id. ¶¶ 15–17.) Plaintiff alleges that this is a misrepresentation, but that Dannon nevertheless "consistently and systematically markets[s] and advertis[es] the Products as All Natural." (Id. ¶ 18.)

Plaintiff alleges that reasonable consumers, including herself, "purchased the Products based upon their belief that the Products were All Natural." (Id. ¶ 33.) But, according to plaintiff, "a reasonable consumer would not deem the Products All Natural if he or she knew that they contained ingredients derived from animals fed GMO crops, subjected to non-natural processes used to increase milk yield, or given hormones . . . or antibiotics." (Id.)

In support for this theory, she relies upon three surveys: the first from 2017 (and not cited), in which 74% of consumers answered "yes" to whether they believe the end product of an animal is affected by the food the animal eats; second, a consumer survey from 2014 in which 64% of consumers said they thought that the "natural" label on meat or poultry meant that the animals' feed had not contained GMOs; and third, a 2010 survey in which 86% of consumers surveyed said that they had expected food labeled natural to contain no artificial ingredients.

Plaintiff points to a brochure released by Dannon on April 27, 2016, in which it pledged "naturality" and stated that it was "working with feed suppliers and [its] farmer partners to start planting non-GMO feed as soon as possible to fulfill [its]

3

needs." (Id. ¶ 39 (citing Dannon Pledge, the Dannon Company, Inc., Apr. 27, 2016, available at www.dannonpledge.com/assets/pdf/ Dannon%20Pledge.pdf.)).

Plaintiff claims that she and the other putative class members reasonably relied on defendant's alleged misrepresentations to their detriment. (Id. ¶ 44.) She therefore claims that they did not obtain the full value of the Products she purchased. (Id. ¶ 47.) She claims that, but for the defendant's misrepresentations, she and the other class members "would not have been willing to pay the same amount for the Products they purchased, and consequently . . . [they] would not have been willing to purchase the Products." (Id. ¶ 49.) She states, without support, that "[c]onsumers equate the word 'natural' with 'organic.'" (Id. ¶ 30.) She also asserts that if defendant's labeling were truthful, she would continue purchasing the products. (Id. ¶ 10.)

The remainder of plaintiff's complaint recites facts and statistics about the use of GMOs and animal husbandry practices more generally, relying on articles from a variety of publications dating as far back as 2001. She relies on a few of the following alleged facts: 1) as of 2012, 88% of corn planted in the United States was grown from a genetically modified seed (Id. ¶ 19); 2) as of 2009, corn accounted for 91% of the feed grains used to feed cows (Id.); and 3) dairy cows in the United States are forced into "unnatural continuous birthing" through inter alia, antibiotics and hormones such as bovine growth hormone ("rBGH") (Id. ¶ 29). She spends several paragraphs of her complaint defining GMOs, then concluding that they are "not natural because they do not naturally occur." (Id. ¶ 27.)

4

Plaintiff asserts seven causes of action. The first four are statutory claims for relief brought under Minnesota Statutes §§ 325D.13, 325D.44 (Minnesota Uniform Deceptive Trade Practices Act ("MUDTPA")), 325F.67 (Minnesota False Statement in Advertising ("MFSA")), and 325F.69 (Minnesota Consumer Fraud Act ("MCFA")). The fifth cause of action is for common law fraud under New York law. The sixth cause of action is a breach of express warranty, and the seventh is a statutory claim under more than 40 different state laws. Plaintiff also seeks injunctive relief barring Dannon from maintaining its existing labeling practices.

II.  LEGAL STANDARDS

   A. Motion to Dismiss

On a motion to dismiss, this Court accepts as true all well-pleaded factual allegations. See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949–50 (2009). This means that the Court must accept plaintiff's factual allegations in its complaint as true and draw all reasonable inferences in plaintiff's favor. See Famous Horse Inc. v. 5th Ave. Photo Inc., 624 F.3d 106, 108 (2d Cir. 2010). To withstand dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 129 S. Ct. at 1949 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

In applying this standard, the Court accepts as true all well-pled factual allegations, but does not credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." Id. at 1940. The Court will give "no effect to legal conclusions couched as factual allegations." Port Dock & Stone Corp.

5

v. Oldcastle Ne., Inc., 507 F.3d 117, 121 (2d Cir. 2007) (citing Twombly, 550 U.S. at 555). If the Court can infer no more than the mere possibility of misconduct from the factual averments—in other words, if the well-pled allegations of the complaint have not "nudged [plaintiff's] claims across the line from conceivable to plausible"— dismissal is appropriate. Twombly, 550 U.S. at 570.

Additionally, when a plaintiff alleges fraud, the pleading standard is heightened. "Rule 9(b) requires that '[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.'" Rombach v. Chang, 355 F.3d 164, 170 (2d Cir. 2004) (quoting Fed. R. Civ. P. 9(b) (alteration in original)). The Second Circuit reads Rule 9(b) to "require that a complaint '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" Id. (quoting Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993)); see also L.S. v. Webloyalty.com, Inc., 673 Fed. App'x 100, 104 (2d Cir. 2016) (laying out the same standard); Wexner v. First Manhattan Co., 902 F.2d 169, 172 (2d Cir. 1990) (requiring plaintiffs to "plead the factual basis which gives rise to a 'strong inference' of fraudulent intent" (quoting Beck v. Manufacturers Hanover Trust Co., 820 F.2d 46, 50 (2d Cir. 1987)).

B. <u>Reasonable Consumer Test</u>

Consumer protection claims in Minnesota and New York are governed by the "reasonable consumer" standard. See Grp. Health Plan, Inc. v. Phillip Morris Inc., 621 N.W.2d 2, 12 (Minn. 2001); Orlander v. Staples, Inc., 802 F.3d 289, 300 (2d Cir.

6

2015) (stating that under a New York consumer protection statute, a plaintiff must allege that the deceptive act is "likely to mislead a reasonable consumer acting reasonably under the circumstances") (internal quotation marks omitted). This reasonable consumer inquiry is factual and in most instances, not resolved at the motion to dismiss stage. However, in "rare situation[s]," courts may resolve the issue at the motion-to-dismiss stage, where the pleading does not plausibly allege that a reasonable consumer would be deceived. Williams v. Gerber Prods. Co., 552 F.3d 934, 939 (9th Cir. 2008).

    C. "Natural" Food Products

The FDA is currently reviewing the proper regulation of the term "natural," and, more specifically, whether that term will encompass foods that have been genetically engineered, or should otherwise take into account the "manner in which an ingredient is produced or sourced." Use of the Term 'Natural' in the Labeling of Human Food Products; Request for Information and Comments, 80 Fed. Reg. 69905, 69908 (Nov. 12, 2015). The current FDA policy is informal and defines "natural" as meaning "nothing artificial or synthetic . . . is included in, or has been added to, the product that would not normally be expected to be there." Food Labeling: Nutrient Content Claims, General Principles, Petitions, Definition of Terms, 56 Fed. Reg. 60421, 60466 (Nov. 27, 1991).

Current federal law does not require that, in cases where animals have been fed with GMO feed, that their end product should be labeled "GMO." See 7 U.S.C.A. § 1639b (prohibiting "a food derived from an animal to be considered a

7

bioengineered food solely because the animal consumed feed produced from, containing, or consisting of a bioengineered substance").

III. DISCUSSION

Defendant argues: 1) that plaintiff's claim should be dismissed for failure to state a plausible claim; 2) that plaintiff lacks standing to pursue injunctive relief;[2] and 3) that plaintiff's claim should be stayed pending upcoming FDA regulations about the use of the word "natural" on food labels.

For her part, plaintiff counters that she can show standing for injunctive relief, that she has plausibly stated a claim for relief, and that the Court should not stay the case. The Court agrees with the defendant; plaintiff has stated no plausible claim for relief.[3]

---

[2] The Court need not decide the issue of standing for injunctive relief here. Courts in this district have differed as to whether plaintiffs seeking injunctive relief for consumer deception will be able to demonstrate standing where, as here, they allege they would buy the products in the future if not mislabeled. See, e.g., Buonasera v. Honest Co., Inc., 208 F. Supp. 3d 555, 563–64 (S.D.N.Y. 2016) (no standing where plaintiff would "consider" buying products if defendants' representations were truthful); Izquierdo v. Mondelez Int'l, Inc., 2016 WL 6459832, at *5 (S.D.N.Y. Oct, 26, 2016) (no standing where plaintiff alleged that he would buy candy again were the defendant to modify its labeling). But see Goldemberg v. Johnson & Johnson Consumer Cos., Inc., 317 F.R.D. 374, 397–98 (S.D.N.Y. 2016) (finding plaintiffs' statements that they would buy products again if they were properly labeled sufficient for standing); Belfiore v. Procter & Gamble Co., 94 F. Supp. 3d 440, 445 (E.D.N.Y. 2015) ("Federal courts have held that plaintiffs have standing to seek injunctive relief based on the allegation that a product's labeling or marketing is misleading to a reasonable consumer, because to hold otherwise would effectively bar any consumer who avoids the offending product from seeking injunctive relief.") (citing Ackerman v. Coca Cola Co., 2013 WL 7044866, at *13–15 (E.D.N.Y. July 18, 2013)).

[3] The Court notes that many courts in this district have stayed similar actions pending the upcoming FDA regulations on the word "natural." See, e.g., Forsher v. J.M. Smucker Co., 2016 WL 6236603, at *1 (E.D.N.Y. Oct. 18, 2016); In re Kind LLC "Healthy & Natural" Litig., 209 F. Supp. 3d 689, 693–97 (S.D.N.Y. 2016). Since the Court finds that there is ample basis for dismissal regardless of any new FDA rules, it does not find a stay necessary.

The nub of plaintiff's claim is simply that yogurt is made from milk, and that—today—most milk is made from cows that consume feed of a particular type, and who are subjected to certain animal husbandry practices. She alleges very little about Dannon's specific practices; she does not allege that a single ingredient in the yogurt is not natural. Rather, her argument is predicated on her own speculation that if the cows that produced the milk that Dannon used to make its yogurt ate food with GMOs or were fed antibiotics, that their milk is necessarily not natural, nor is the yogurt that is made from it.

Her arguments are conclusory, based on both her own feelings ("[plaintiff] believes GMOs and GMO crops are not natural," (SAC ¶¶ 9–10)) and on a variety of surveys she has found that span the past decade. Such a conclusory argument cannot meet Twombly's insistence that claims be nudged over the line from conceivable to plausible. 550 U.S. at 570.

Dannon's statement that it is moving towards planting more GMO-free crops, undermines plaintiff's own argument that she purchased the Products based on the misapprehension that they were made from a GMO-free food chain. Rather, it seems as if plaintiff herself should have been on notice as of April 27, 2016, based both on the myriad of articles dating back to 2001, and on Dannon's press release, that its Products were not, in fact, wholly protected from GMO-influence at any part of the food chain.[4] There are no allegations that plaintiff did not know these facts.

---

[4] The Dannon Naturality pledge discusses frankly that it will "start planting non-GMO feed as soon as possible." Dannon Pledge, the Dannon Company, Inc., Apr.27, 2016, available at www.dannonpledge.com/assets/pdf/ Dannon%20Pledge.pdf (emphasis added).

9

Plaintiff cites several cases in support of her claim, stating that she is on solid legal footing. However, these cases don't present the same speculative arguments plaintiff attempts to make here. In <u>Buonasera v. Honest Company, Inc.</u>, 208 F. Supp. 3d 555 (S.D.N.Y. 2016), the plaintiff alleged that defendant deceptively labeled its products "natural" when they in fact contained toxic ingredients, and in <u>Goldemberg v. Johnson & Johnson Consumer Cos., Inc.</u>, 8 F. Supp. 3d 467 (S.D.N.Y. 2014), the plaintiff alleged that defendant labeled its hair and body products as "All Natural" when in fact they contained many synthetic ingredients, all of which were listed in small print on the back of the bottles.

Here, in contrast, plaintiff does not allege that <u>any ingredient</u> used in the Products is unnatural; her claim is that, several steps back in the food chain, there may have been something unnatural ingested by a cow. Even in the sole case plaintiff cites that is related to GMOs, <u>Reilly v. Chipotle Mexican Grill, Inc.</u>, No. 15-cv-23425-MGC (S.D. Fla. Nov. 17, 2016), the allegation was that defendants were specifically advertising "GMO free" meat when the very meat they were serving had been served GMOs.[5]

In contrast, in <u>Gallagher v. Chipotle Mexican Grill, Inc.</u>, 2016 WL 454083, at *1 (N.D. Cal. Feb. 5, 2016), the court rejected a similar claim where "[p]laintiff ha[d] not alleged that any of the ingredients used by Defendant . . . ha[d] been altered using . . . genetic engineering techniques" nor was there any allegation "that the

---

[5] While this claim did survive the motion to dismiss stage, at summary judgment it was found insufficient as a matter of law.

10

animals from which Defendant's meat and dairy ingredients were produced were genetically modified" (internal quotation marks omitted). Accordingly, the court granted defendant's motion to dismiss, since no ingredients in plaintiff's complaint fit her definition of GMO, nor were there any allegations that the animals were genetically modified.

As in Gallagher, plaintiff's claims here should be dismissed. There is no legal support for the idea that a cow that eats GMO feed or is subjected to hormones or various animal husbandry practices produces "unnatural" products; furthermore Dannon does not specifically represent that its products are either GMO-free or not given hormones or antibiotics. The Court therefore finds plaintiff's argument too speculative to state a plausible claim and GRANTS defendant's motion to dismiss.

IV. CONCLUSION

For the reasons stated above, the defendant's motion to dismiss plaintiff's claims is GRANTED. The Clerk of Court is directed to terminate the motion at ECF No. 32 and terminate this action.

SO ORDERED.

Dated:     New York, New York
            December 3, 2017

                                          KATHERINE B. FORREST
                                          United States District Judge